**FILED**

JAN - 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE

JUDICIAL DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHARLEY M. HUNT, JR., | § | Case: 1:08-cv-00037 |
| | § | Assigned To : Friedman, Paul L. |
| Petitioner/Plaintiff, | § | Assign. Date : 1/7/2008 |
| | § | Description: Habeas Corpus/2255 |
| vs. | § | |
| | § | |
| ALBERTO GONZALES, [or acting], | § | ADMINISTRATIVE |
| ATTORNEY GENERAL FOR THE | § | AND |
| "UNITED STATES OF AMERICA," | § | QUASI-JUDICIAL NOTICE |
| | § | |
| and | § | |
| | § | |
| HARLEY G. LAPPIN, DIRECTOR OF | § | |
| BUREAU OF FEDERAL PRISONS, | § | |
| | § | |
| Respondent(s)/Defendant(s). | § | |
| | § | |

**COMES NOW**, Charley M. Hunt, Jr., the Petitioner, and submits this
Judicial Notice, to appraise the court of the following, by and
through said notice:

1.

Subsection §2255, of Title 28 of the United States Code, is
inapplicable and without the force or effect of law where it is
shown not to have been enacted by Congress, into Federal Law.
The Congressional Record, Vol-94 Part 7 (June 15, 1948 to June
19, 1948) page 8229-9169, and Vol-94 Part 8, (July 26, 1948 to
December 31, 1948) reveal that Congress was not assembled in
session on the dates(s) that Title 3, 6, 8, 18, 21, 28 and 46
are purported to have been enacted into law by Congress.

**RECEIVED**

JAN - 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

///// - 1 JUDICIAL NOTICE

2

2.

The United States District Court, where the cause herein complained of, arose, is shown to be an Executive Tribunal, without Article III Judicial Authority.  This assertion is supported by consulting Supreme Court Rule 45, the Revised Statutes of 1878, The Judicial Act of March 3, 1911, Executive Order 6166, **Balzac v. Porto Rico, (192).  Mookine v. United States, (1938).**  Thus, not authorized to entertain the cause now before the court.

3.

Thus, the Court in similar matters (Common law Writ of Habeas Corpus), appear to be resorting to inapplicable statutory provisions to remove the cause to a court which the court knows lacks the authority under Article III to entertain the matter.  Thereby, the sustainment of an unlawful conviction and term of imprisonment via subterfuge and non-compliance with the law (a Malum in se Crime?) whereby the Accused/Petitioner is deprived a remedy in law to redress a grievance.

4.

It is for these reasons that the Petitioner has brought his intant cause under the common law, writ of habeas corpus, and invoked the venue and jurisdiction of an Article III, Constitutional Court.

5.

It is thereby incumbent upon this Court, in the interest of justice by and through this Judicial Notice, as a neutral party between both Petitioner and Respondent upon its own motion to issue an **ORDER TO SHOW CAUSE** TO THE RESPONDENT(s) why a **WRIT OF HABEAS CORPUS** should not issue, in their "showing" based upon the facts and points raised in the Petition.


Date: _Dec - 27_____, 2007.    Submitted by:


_Charley M. Hunt Jr._

**Charley M. Hunt, Jr.**

IN THE UNITED STATES DISTRICT COURT
FOR THE
JUDICIAL DISTRICT OF COLUMBIA

CHARLEY M. HUNT, JR.,                    §         No. _____

     Petitioner/Plaintiff,              §         RE: No. S1-4:07-CR-121-CAS
                                         §
vs.                                      §
                                         §
ALBERTO GONZALES, [or acting],           §         JUDICIAL NOTICE
ATTORNEY GENERAL FOR THE                 §         RULE 201(d)
"UNITED STATES OF AMERICA,"              §
                                         §
and                                      §
                                         §
HARLEY G. LAPPIN, DIRECTOR OF            §
THE BUREAU OF FEDERAL PRISONS,           §
                                         §
     Respondnet(s)/Defendant(s).        §
_____ §

     **COMES NOW**, Charley M. Hunt, Jr., in want of counsel, and accused in the above captioned cause, and as Petitioner for the instant motion to request "Judicial Notice" in the nature of Rule 201(d) of the Federal Rules of Evidence, shows this court as follows:

1.

     That the undersigned requests the Court to take "Judicial Notice" of a certain excerpt from the United States Government's publication which is specifically "The Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas within the [several sovereign] states.

/////

/////  - JUDICIAL NOTICE

2.

That the undersigned requests the court to take "Judicial Notice" of the statutes of the State of Texas, without limitations, at Chapter 1 §1, et. seq.

3.

That the undersigned requests the court to take "Judicial Notice" without limitations, to Article I, Section 8, Clause 17, in amendment to the Constitution of the United States.

4.

That the undersigned requests the court to take "Judicial Notice" of the Government's charging instruments whereon, the government fails to describe a 'locus in quo,' wherein the alleged violation conduct of the undersigned was committed; which is within the legislative, territorial or admiralty jurisdiction of the Federal United States, corporation (28 U.S.C. §3002 (15)(A)).

5.

That the undersigned requests the court to take "Judicial Notice" of the self-evident fact that the government's charging instrument(s) fail to allege or charge the undersigned with an alleged violation of the Federal Commerce Clause which is in he sine qua non to the legitimate application of the federal statutory provisions under which the undersigned was charged, with out nexus to the former, there can no operation of the latter.

6.

That the undersigned submits the following for judicial review by the court, citing from the government's report entitled: Jurisdiction Over Federal Areas Within The States, subtitled; "Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas within the States."

7.

The Constitution of the United States at Article I, Section 8, Clause 17:

> "The Congress shall have power...to exercise exclusive Legislation in all cases whatsoever, over such district (not exceeding ten miles square) as may, be cession of particular states, and the acceptance of Congress, become the Seat of the Government of the United States, and to exercise like authority over all places purchased by the consent of

the legislature of the State in which the same shall be,
for the erection of forts, magazines, arsenals, dock-yards
and other needful buildings, and to make all laws which
shall be necessary and proper for carrying into execution
the foregoing powers and all other powers vested by this
Constitution in the Government of the United States, or in
any department or office thereof....

The significance of the foregoing in the above styled action is
the purported plaintiff herein cannot demonstrate that the court has
jurisdiction to adjudicate the matter.  In support of the said arg-
ument the undersigned refers the court to a publication entitled
JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES, and subtitled Report
of the Interdepartmental Committee for the Study of Jurisdiction over
Federal Areas within the States, which was published in two volumes
by the United States printing office.  Excerpts from the said public-
ation are as follows:

/////

"The White House,
Washington, April 27, 1956.

Dear Mr. Attorney General:

I am herewith returning to you, so that it may be published and receive the widest possible distribution among those interested in Federal real property matters, Part I of the Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. I am impressed by the well-planned effort which went into the study underlying this report and by the soundness of the recommendations which the report makes.

It would seem particularly desirable that the report be brought to the attention of the Federal administrators of real properties, who should be guided by it in matters related to legislative jurisdiction, and to the President of the Senate, the Speaker of the House of Representatives, and appropriate State officials, for their consideration of necessary legislation. I hope that you will see to this. I hope, also, that the General Services Administration will establish as soon as may be possible a central source of information concerning the legislative jurisdictional status of Federal properties and that that agency, with the Bureau of the Budget and the Department of Justice, will maintain a continuing and concerted interest in the progress made by all Federal agencies in adjusting the status of their properties in conformity with the recommendations made in the report.

The members of the Committee and the other officials, Federal and State, who participated in the study, have my appreciation and congratulations on this report. I hope they will continue their good efforts so that the text of the law on the subject of legislative jurisdiction which is planned as a supplement will issue as soon as possible.

Sincerely,
Dwight D. Eisenhower.

The Honorable Herbert Brownell, Jr.,
The Attorney General, Washington, D. C."

and

# LETTER OF ACKNOWLEDGMENT

The White House
Washington, July 8, 1957.

Dear Mr. Attorney General:

I have taken note of the final report (Part II) which you transmitted to me, rendered by the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. It is my understanding that the report is to be published and distributed, for the purpose of making available to Federal administrators of real property, Federal and State legislators, the legal profession, and others, this text of the law of legislative jurisdiction in these areas.

In view of the fact that the work of the Committee is completed, and since other departments and agencies of the Government now have clear direction for turning this work into permanent gains in improved Federal-State relations, the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States is hereby dissolved.

Chairman Perry W. Morton and the members of this Committee have my congratulations and sincere appreciation of their service to our country in bringing to light the facts and law in this much neglected field. This monumental work, culminating three years of exhaustive effort, lays an excellent foundation for allocating to the States some of the functions which under our Federal-State system should properly be performed by State Governments.

Sincerely,
Dwight Eisenhower

The Honorable Herbert Brownell, Jr.,
The Attorney General,
Washington, D. C.

## LETTER OF TRANSMITTAL

Office of the Attorney General,
Washington, DC, June 28, 1957.

Dear Mr. President:

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States now has submitted the second, and final, part of its report, a text of the law of legislative jurisdiction over such areas.

This exhaustive and analytical exposition of the law in this hitherto little explored field is a valuable supplement to the first part of the report, the compilation of facts, with recommendations, which received your commendation in April 1956, and constitutes a major addition to legal bibliography.

Together, the two parts of this Committees report and the full implementation of its recommendations will provide a basis for reversing in many areas the swing of "the pendulum of power" * * * from our states to the central government, to which you referred in your address to the Conference of State Governors on June 25, 1957.

The excellence of the work of the Committee reflects great credit upon its Chairman and members. Also especially noteworthy is the splendid assistance which the Committee received from the attorneys general of the several States, the general counsels of Federal agencies, and other State and Federal officials.

With the submission of this second part of its report the Committee has completed its work and recommends that it be dissolved. Since the Departments and other permanent agencies of the Federal Government now can carry out directions which you have issued based upon the work of the Committee, I join in this recommendation.

Respectfully,
Herbert Brownell, Jr.

# PREFACE

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States was formed on December 15, 1954, on the recommendation of the Attorney General approved by the President and the Cabinet The basic purpose for which the Committee was founded was to find means for resolving the problems arising out of jurisdictional status of Federal lands. Addressing itself to this purpose, the Committee; with assistance from all Federal agencies interested in the problems (a total of 33 agencies), from State Attorneys General, and from numerous other sources, prepared a report entitled Jurisdiction over Federal Areas Within the States Part I, The Facts and Committee Recommendations. This report, approved by the President on April 27, 1956, set out the findings of the Committee and recommended changes in Federal and State law, and in Federal agencies' practices, designed to eliminate existing problems arising out of legislative jurisdiction. It included two appendices.

The Committees research involved a general survey of the jurisdictional status of all federally owned real property in the 48 States, and a detailed survey of the status of individual such properties in the States of Virginia, Kansas, and California. These three named States were selected as containing Federal real properties representative of such properties in all the States. Information was procured concerning the practices and problems related to legislative jurisdiction of the 23 Federal Agencies controlling real property, and of the advantages and disadvantages of the several legislative jurisdictional statues for the various purposes for which federally owned land is used. This information is reflected and analyzed in the several chapters of Part I of the report, and is summarized in Appendix A of the same part.

The Committees study included a review of the policies, practices, and problems of the 48 States related to legislative jurisdiction. Information concerning these matters similarly is reflected and analyzed in various portions of Part I of the report, with Chapter V of the part being entirely devoted to the laws and problems of States related to legislative jurisdiction. Also, the texts of State (and Federal) constitutional provisions and statutes related to jurisdiction in effect as of December 31, 1955, are gathered in appendix B of Part I.

The major conclusions of the Committee, set out in Part I of - the report, which, of course, are applicable only to the 48 States to which the Committees study extended, and do not apply to present Territories or the District of Columbia, are to the effect that in the usual case the Federal Government should not receive or retain any of the States' Legislative Jurisdiction within federally owned areas, that in some special cases (where general law enforcement by Federal authorities is indicated) the Federal Government should receive or retain legislative jurisdiction only concurrently with the States, and that in any case the Federal Government should not receive or retain any of the States' legislative jurisdiction with respect to taxation, marriage, divorce, descent and distribution of property, and a variety of other matters, specified in the report, which are ordinarily the subject of State control.

The conclusions reached by the Committee were, of course, made only after an appraisal of the facts adduced during the study in the light of applicable law, including the great body of decisions handed down by courts and opinions rendered by governmental legal officers, Federal and State, interpretative of situations affected by legislative jurisdiction.

Recommendations made by the Committee, based on the conclusions indicated above and on certain subsidiary findings, now constitute the policy of the Executive branch of the

Federal Government, and are being implemented by Federal agencies to the extent possible under existing law. However, full implementation of these recommendations must await the enactment of certain suggested Federal and State legislation.

In the course of its study the Committee ascertained the existence of serious lack of legal bibliography on the subject-matter of its interest. With the concurrence of the Attorney General of the United States and the encouragement of the President, it has proceeded with the publication of this Part II of its report, a compilation of the court decisions and legal opinions it weighed in the course of its study of the subject of Legislative jurisdiction.

## LAW OF LEGISLATIVE JURISDICTION

Legal Problems many. -- In view of the vastness of Federal real estate holdings, the large variety of activities conducted upon them, and the presence on many areas of resident employees and other persons, it is to be expected that many legal problems will arise on or with respect to these holdings. In addition to the problems normally encountered in administering and enforcing Federal laws, complicated by occasional conflict with over lapping State laws, the ownership and operation by the Federal Government of areas within the States gives rise to a host of legal problems largely peculiar to such areas. They arise not only because of the fact of Federal ownership and operation of these properties, but also because in numerous instances the Federal Government has with respect to such properties a special jurisdiction which excludes, in varying degrees, the jurisdiction of the State over them, and which in other instances is, to varying extents, concurrent with that of the State.

## FEDERAL POSSESSION OF EXCLUSIVE JURISDICTION

By constitutional consent. -- This special jurisdiction which is often possessed by the United States stems, basically, out of Article I, Section 8, Clause 17, of the Constitution of the United States, which provides, in legal effect, that the Federal Government shall have exclusive legislative jurisdiction over such area, not exceeding 10 miles square, as may become the seat of government of the United States, and like authority over all places acquired by the Government, with the consent of the State involved, For various Federal purposes. It is the latter part of the clause, the part which has been emphasized, with which this study is particularly concerned. There is a general public awareness of the fact that the United States Government exercises all governmental authority over the District of Columbia, by virtue of power conferred upon it by a clause of the Constitution. There is not the same awareness that under another provision of this same clause the United States has acquired over several thousand areas within the States some or all of those powers, judicial and executive as well as legislative, which under our Federal-State system of government ordinarily are reserved to the States.

By Federal reservation or State cession. For many years after the adoption of the Constitution, Federal acquisition of State-type legislative jurisdiction occurred only by direct operation of Clause 17. The clause was activated through the enactment of State statutes consenting to the acquisition by the Federal Government either of any land, or of specific tracts of land, within the State. In more recent years the Federal Government has in several instances made reservations of jurisdiction over certain areas in connection with the admission of State into the Union. A third means by which Federal legislative jurisdiction now

has come into considerable use, whereby in a general or special statute a State makes a cession of jurisdiction to the Federal Government. Courts and other legal authorities have distinguished at various times between Federal legislative jurisdiction derived, on the one hand, directly from operation of Clause 17, and, on the other, from a Federal reservation or a State cession of jurisdiction. In the main, however, the characteristics of a legislative Jurisdiction status are the same no matter by which of the three means the Federal Government acquired such status. Differences in these characteristics will be specially pointed out in various succeeding portions of this work.

Governmental Power merged in Federal Government. -- Whether by operation of Clause 17, by reservation of jurisdiction by the United States, or by cession of jurisdiction by States, in many areas all governmental authority (with recent exceptions which will be noted) has been merged in the Federal Government, with none left in any State. By this means some thousands of areas have become Federal islands, sometimes called "enclaves,.., in many respects foreign to the States in which they are situated. In general, not State but Federal law is applicable in an area under the exclusive legislative jurisdiction of the United States, for enforcement not by State but Federal authorities, and in many instances not in State but in Federal courts. Normal authority of a State over areas within its boundaries, and normal relationships between a State and its inhabitants, are disturbed, disrupted, or eliminated, as to enclaves and their residents.

The State no longer has the authority to enforce its criminal laws in areas under the exclusive jurisdiction of the United States. Privately owned property in such areas is beyond the taxing authority of the State. It has been generally held that residents of such areas are not residents of the State, and hence not only are not subject to the obligations of residents of the State but also are not entitled to any of the benefits and privileges conferred by the State upon its residents. Thus, residents of Federal enclaves usually cannot vote, serve on juries, or run for office. They do not, as a matter of right, have access to State schools, hospitals, mental institutions, or similar establishments. The acquisition of exclusive jurisdiction by the Federal Government renders unavailable to the residents of the affected areas the benefits of the laws and judicial and administrative processes of the State relating to adoption, the probate of wills and administration of estates, divorce, and many other matters. Police, fire-fighting, notarial, coroner, and similar services performed by or under the authority of a State may not be rendered with legal sanction, in the usual case, in a Federal enclave.

## EXERCISE OF EXCLUSIVE FEDERAL JURISDICTION

Legislative authority little exercised. -- States do not have authority to legislate for areas under the exclusive legislative Jurisdiction of the United States, but the Congress has not legislated for these areas either,, except in some minor particulars.

Exercise as to crimes. -- With respect to crimes occurring within Federal enclaves the Federal Congress has enacted the Assimilative Crimes Act, which adopts for enclaves, as Federal law, the State law which is in effect at the time the crime is committed. The Federal Government also has specifically defined and provided for the punishment of a number of crimes which may occur in Federal enclaves, and in such cases the specific provision, of course, supersedes the Assimilative Crimes Act.

Exercise as to civil matters. -- Federal legislation has been enacted authorizing the

extension to Federal enclaves of the workmen's compensation and unemployment compensation laws of the States within the boundaries of which the enclaves are located. The Federal Government also has provided that State law shall apply in suits arising out of the death or injury of any person by the neglect or wrongful act of another in an enclave. It has granted to the States the right to impose taxes on motor fuels sold on Government reservations, and sales, use, and income taxes on transactions or uses occurring or services performed on such reservations; it has allowed taxation of leasehold interests in Federal property including property located on Federal enclaves; and it has retroceded to the States jurisdiction pertaining to the administration of estates of residents of Veterans Administration facilities. This is the extent of Federal legislation enacted to meet the special problems existing on areas under the exclusive legislative jurisdiction of the United States.

## RULE OF INTERNATIONAL LAW

Extended by courts to provide civil law. -- The vacuum which would exist because of the absence of State law or Federal legislation with respect to civil matters in areas under Federal exclusive legislative jurisdiction has been partially filled by the courts, through extension to these areas of a *Rule of International Law* that when one sovereign takes over territory of another the laws of the original sovereign in effect at the time of the taking which are not inconsistent with the laws or policies of the second continue in effect, as laws of the succeeding sovereign, until changed by that sovereign.

## ACQUISITION OF LEGISLATIVE JURISDICTION
## THREE METHODS FOR FEDERAL ACQUISITION OF JURISDICTION

Constitutional Consent. -- The Constitution gives express recognition to but one means of Federal acquisition of legislative jurisdiction -- by State consent under Article I, Section 8, Clause 17. The debates in the Constitutional Convention and State ratifying conventions leave little doubt that both the opponents and proponents of Federal exercise of exclusive legislative jurisdiction over the seat of government were of the view that a constitutional provision such as Clause 17 was essential if the Federal Government was to have such jurisdiction. At no time was it suggested that such a provision was unessential to secure exclusive Legislative jurisdiction to the Federal Government over the seat of government. While, as has been indicated in the preceding chapter, little attention was given in the course of the debates to Federal exercise of exclusive legislative jurisdiction over areas other than the seat of government, it is reasonable to assume that it was the general view that a special constitutional provision was essential to enable the United States to acquire exclusive legislative jurisdiction over any area. Hence, the proponents of exclusive legislative jurisdiction over the seat of government and over federally owned areas within the States defended the inclusion in the Constitution of a provision such as Article I, Section 8, clause 17. And in United States v. Railroad Bridge Co., 27 Fed. Cas. 686, 693, No. 16,114 (C. C. N. D. Ill., 1855), Justice McLean suggested that the Constitution provided the sole mode for transfer of jurisdiction, and that if this mode is not pursued no transfer of jurisdiction can take place.

State cession. -- However, in Fort Leavenworth R. R. v. Lowe, 114 U. S. 525 (1885), the United States Supreme Court sustained the validity of an act of Kansas ceding to the

United States legislative jurisdiction over the Fort Leavenworth military reservation, but reserving to itself the right to serve criminal and civil process in the reservation and the right to tax railroad, bridge, and other corporations, and their franchises and property on the reservation. In the course of its opinion sustaining the cession of legislative jurisdiction, the Supreme Court said (p. 540):

> We are here met with the objection that the Legislature of a State has no power to cede away her jurisdiction and legislative power over any portion of her territory, except as such cession follows under the Constitution from her consent to a purchase by the United States for some one of the purposes mentioned. If this were so, it could not aid the railroad company; the jurisdiction of the State would then remain as it previously existed. But aside from this consideration, it is undoubtedly true that the State, whether represented by her Legislature, or through a convention specially called for that purpose, is in competent to cede her political jurisdiction and legislative authority over any part of her territory to a foreign country, without the concurrence of the general government. The jurisdiction of the United States extends over all the territory within the States, and, therefore, their authority must be obtained, as well as that of the State within which the territory is situated, before any cession of sovereignty or political jurisdiction can be made to a foreign country. * * * In their relation to the general government, the States of the Union stand in a very different position from that which they hold to foreign governments. Though the jurisdiction and authority of the general government are essentially different from those of the State, they are not those of a different country; and the two, the State and general government, may deal with each other in any way they may deem best to carry out the purposes of the Constitution. It is for the protection and interests of the States, their people and property, as well as for the protection and interests of the people generally of the United States, that forts, arsenals, and other buildings for public uses are constructed within the States. As instrumentalities for the execution of the powers of the general government, they are, as already said, exempt from such control of the States as would defeat or impair their use for those purposes; and if, to their more effective use, a cession of legislative authority and political jurisdiction by the State would be desirable, we do not perceive any objection to its grant by the Legislature of the State. Such cession is really as much for the benefit of the State as it is for the benefit of the United States.

Had the doctrine thus announced in Fort Leavenworth *R. R. v. Lowe*, supra, been known at the time of the Constitutional Convention, it is not improbable that Article I, Section 8, Clause 17, at least insofar as it applies to areas other than the seat of government, would not have been adopted. Cession as a method for transfer of jurisdiction by a State to the United States is now well established, and quite possibly has been the method of transfer in the majority of instances in which the Federal .......

Federal Reservation. -- In Fort Leavenworth *R. R. v. Lowe*, supra, the Supreme Court approved a second method not specified in the Constitution of securing legislative jurisdiction in the United States. Although the matter was not in issue in the case, the Supreme Court said (p. 526):

The land constituting the Reservation was part of the territory acquired in 1803 by cession from France, and, until the formation of the State of Kansas, and her admission into the Union, the United States possessed the rights of a proprietor, and had political dominion and sovereignty over it. For many years before that admission it had been reserved from sale by the proper authorities of the United States for military purposes, and occupied by them as a military post. The jurisdiction of the United States over it during this time was necessarily paramount. But in 1861 Kansas was admitted into the Union upon an equal footing with the original States, that is, with the same rights of political dominion and sovereignty, subject like them only to the Constitution of the United States. Congress might undoubtedly, upon such admission, have stipulated for retention of the political authority, dominion and legislative power of the United States over the Reservation, so long as it should be used for military purposes by the government; that is, it could have excepted the place from the jurisdiction of Kansas, as one needed for the uses of the general government. But from some cause, inadvertence perhaps, or over-confidence that a recession of such jurisdiction could be had whenever desired, no such stipulation or exception was made.

Almost the same language was used by the Supreme Court of Kansas in *Clay v. State*, 4 Kan. 49 (1866), and another suggestion -- of judicial recognition of this doctrine is to be found in an earlier case in the Supreme Court of the United States, *Langford v. Montieth*, 102 U. S. 145 ( 1880), in which it was held that when an act of Congress admitting a State into the Union provides, in accordance with a treaty, that the lands of an Indian tribe shall not be a part of such State or Territory, the new State government has no jurisdiction over them. "The enabling acts governing the admission of several of the States provided that exclusive jurisdiction over certain areas was to be reserved to the United States" in view of these developments, an earlier opinion of the United States Attorney General indicating that a State legislature, as distinguished from a State constitutional convention, had to give the consent to transfer jurisdiction specified in the Federal Constitution (12 Ops. A. G. 428 (1868)), would seem inapplicable to a Federal reservation of jurisdiction.

Since Congress has the power to create States out of Territories and to prescribe the boundaries of the new States, the retention of exclusive legislative jurisdiction over a federally owned area within the State at the time the State is admitted into the Union would not appear to pose any serious constitutional difficulties.

No Federal Legislative Jurisdiction without consent cession, or reservation. -- It scarcely needs to be said that unless there has been a transfer of jurisdiction (1) pursuant to Clause 17 by a Federal acquisition of land with State consent, or (2) by cession from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon the admission of the State, the Federal Government possesses no legislative jurisdiction over any area within a State, such jurisdiction being for exercise entirely by the State, subject to non-interference by the State with Federal functions, and subject to the free exercise by the Federal Government of rights with respect to the use, protection, and disposition of its property.

# NECESSITY OF STATE ASSENT TO TRANSFER OF JURISDICTION
## TO FEDERAL GOVERNMENT

Constitutional Consent --The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any areas within the exterior boundaries of a State. Article I, Section 8, Clause 17, of the Constitution, provides that legislative jurisdiction may be transferred pursuant to its terms only with the consent of the legislature of the State in which is located the area subject to the jurisdictional transfer. As was indicated in Chapter II, the consent requirement of Article I, Section 8, Clause 17, was intended by the framers of the Constitution to preserve the States Jurisdictional integrity against Federal encroachment.

State cession or Federal reservation. -- The transfer of legislative Jurisdiction pursuant to either of the two means not spelled out in the Constitution likewise requires the assent of the State in which is located the area subject to the jurisdictional transfer. Where legislative jurisdiction is transferred pursuant to a State cession statute, the State has quite clearly assented to the transfer of legislative jurisdiction to the Federal Government, since the enactment of a State cession statute is a voluntary act on the part of the legislature of the State.

The second method not spelled out in the Constitution of vesting legislative jurisdiction in the Federal Government, namely, the reservation of legislative jurisdiction by the Federal Government at the time statehood is granted to a Territory, does not involve a transfer of legislative jurisdiction to the Federal Government by a State, since the latter never had jurisdiction over the area with respect to which legislative jurisdiction is reserved. While, under the second method of vesting legislative jurisdiction in the Federal *Government*, the latter may reserve such jurisdiction without inquiring as to the wishes or desires of the people of the Territory to which statehood has been granted, nevertheless, the people of the Territory involved have approved, in at least a technical sense, such reservation. Thus, the reservation of legislative jurisdiction constitutes, in the normal case, one of the terms and conditions for granting statehood, and only if all of the terms and conditions are approved by a majority of the voters of the Territory, or by a majority of the Territorial legislature, is statehood granted.

## NECESSITY OF FEDERAL ASSENT

Express Consent Required by R. S. 355.-- Acquiescence, or acceptance, by the Federal Government, as well as by the State, is essential to the transfer of legislative jurisdiction to the Federal Government. When legislative jurisdiction is reserved by the Federal Government at the time statehood is granted, to a Territory, it is, of course, obvious that the possession of legislative jurisdiction meets with the approval of the Federal Government. When legislative jurisdiction is to be transferred by a State to the Federal Government either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a State cession statute, the necessity of Federal assent to such transfer of legislative jurisdiction has been firmly established by the enactment of the February 1, 1940, amendment to R. S. 355. While this amendment in terms specifies requirement for formal Federal acceptance prior to the transfer of exclusive or partial legislative jurisdiction, it also applies to the transfer of concurrent jurisdiction. The United States Supreme Court, in *Adams v. United States*, 319 U. S. 312 (1943), in the course of its opinion said (pp. 314-315):

Both the Judge Advocate General of the Army and the Solicitor of the Department of Agriculture have construed the 1940 Act as requiring that notice of acceptance be filed if the government is to obtain *concurrent* jurisdiction. The Department of Justice has abandoned the view of jurisdiction which prompted the institution of this proceeding, and now advises us of its view that concurrent jurisdiction can be acquired only by the formal acceptance prescribed in the Act. These agencies cooperated in developing the Act, and their views are entitled to great weight in its interpretation. * * * Besides, we can think of no other rational meaning for the phrase "jurisdiction, exclusive or partial," than that which the administrative construction gives it. Since the govern merit had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken.

Former Presumption of Federal acquiescence in absence of dissent. -- Even before the enactment of the 1940 amendment to R. S. 355, it was clear that a State could not transfer, either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a cession statute, legislative jurisdiction to the Federal Government without the latter's consent Prior to the 1940 amendment to R. S. 355, However, it was not essential that the consent of the Federal *Government* be expressed formally or in accordance with, any prescribed procedure. Instead, it was presumed that the Federal Government accepted the benefits of a State enactment providing for the transfer of legislative jurisdiction. As discussed more fully below, this presumption of acceptance was to the effect that once a State legislatively indicated a willingness to transfer exclusive jurisdiction such jurisdiction passed automatically to the Federal Government without any action having to be taken by the United States. However, the presumption would not operate where Federal action was taken demonstrating dissent from the acceptance of proffered jurisdiction.

Presumption in transfers by cession. -- In Fort Leavenworth *R. R. R. v. Lowe*, supra, in which a transfer of legislative jurisdiction by means of a State cession statute was approved for the first time, the court said (p. 528) that although the Federal Government had not in that case requested a cession of *jurisdiction*, nevertheless, "as it conferred a benefit, the acceptance of the act is to be presumed in the *absence* of any dissent on their part." See also *United States v. Johnston*, 58 F. Supp. 208, aff'd., 146 F. 2d 268 (C. A. 9, 1944), cert. den., 324 U. S. 876; 38 Ops. A. G. 341 (1935). A similar view has been expressed by a number of courts to transfers of jurisdiction by cession. In some instances, however, the courts have indicated the existence of affirmative grounds supporting Federal acceptance of such transfers. In *Yellowstone Park Transp. Co. v. Gallatin County*, 31 F. 2d 644 (C. A. 9, 1929), cert. den., 280 U. S. 555, it was stated that acceptance by the United States of a cession of jurisdiction by a State over a national park area within the State may be implied from acts of Congress providing for exclusive jurisdiction in national parks. See also *Columbia River Packers. Ass'n v. United States*, 29 F. 2d 91 (C. A. 9, 1928); *United States v. Unzeuta*, 281 U. S. 138 (1930).

Presumption in transfers by constitutional consent.-- Until recent years, it was not clear *but* that the consent granted by a State pursuant to Article I, Section 8, Clause 17, of the Constitution, would under all circumstances serve to transfer legislative jurisdiction to the

Federal Government where the latter had "purchased" the area and was using it for one of the purposes enumerated in Clause 17. In *United States v. Cornell*, 25 Fed. Cas. 646, No. 14,867 (C. C. D. R. I., 1819), Justice Story expressed the view that Clause 17 is self-executing, and acceptance by the United States of the "benefits" of a State consent statute was not mentioned as an essential ingredient to the transfer of legislative jurisdiction under Clause 17. In the course of his opinion in that case, Justice Story said (P. 648):

> The constitution of the United States declares that congress shall have power to exercise "exclusive legislation" in all "cases whatsoever" over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings. When therefore a purchase of land for any of these purposes is made by the national government, and the state legislature has given its consent to the purchase, the land so purchased by the very terms of the constitution ipso facto falls within exclusive legislation of congress, and the state jurisdiction is completely ousted. [Italics added.]

As late as 1930, it was stated in *Surplus Trading Co. v. Cook*, 281 U. S. 647, that (p. 652):

> It long has been settled that where lands for such a purpose [one of those mentioned in Clause 17] are purchased by the United States with the consent of the state legislature "the jurisdiction theretofore residing in the State passes," in virtue of the constitution provision, "to the United States," thereby making the jurisdiction of the latter the sole jurisdiction. [Italics added.]

The italicized portions of the quoted excerpts suggest that Article I, Section 8, Clause 17, of the Constitution, may be selfexecuting where the conditions specified in that clause for the transfer of jurisdiction have been satisfied.

In *Mason Co. v. Tax Comm'n*, 302 U. S. 186 (1937), however, the Supreme Court clearly extended the acceptance doctrine, first applied to transfers of legislative jurisdiction by State cession statutes in Fort Leavenworth *R. R. v. Lowe*, supra, to transfers pursuant to Article I, Section 8, Clause 17, of the Constitution. The court said (p. 207):

> Even if it were assumed that the state statute should be construed to apply to the federal acquisitions here involved, we should still be met by the contention of the Government that it was not compelled to accept, and has not accepted, a transfer of exclusive jurisdiction. As such a transfer rests upon a grant by the State, through consent or cession, it follows, in accordance with familiar principles applicable to grants, that the grant may be accepted or declined. Acceptance may be presumed in the absence of evidence of a contrary intent, but we know of no constitutional principle which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests. * * *

What constitutes dissent. -- Only in a few instances have the courts indicated what may constitute a "dissent" (*See Fort Leavenworth R. R. v. Lowe*, supra) by the Federal Government from a State's proffer of legislative jurisdiction. In *Mason Co. v. Tax Comm'n*,

supra, the court concluded that a validation by Congress of contracts entered into by Federal administrative officials granting to State, officials certain authority with respect to schools, police protection, etc., reflected a Congressional intent not to accept the legislative jurisdiction offered to the Federal Government by the State by the latter's enactment of a consent statute. In a State case (*International Business Machines Corporation v. Ott*, 230 La. 666, 89 So. 2d 193 (1956)), use by the Federal installation of similar State services, with no indication of Congressional knowledge in the latter, was held to have negative Federal acceptance of jurisdiction proffered under a general consent and cession statute of the State. It may be noted that extension of this decision would put in doubt the status of many, if not most, Federal areas now considered to be under the legislative jurisdiction of the United States. In *Atkinson v. State Tax Commission*, 303 U. S. 20 (1933), the court indicated that the enforcement of the Oregon workmen's compensation law in the Federal area was incompatible with exclusive Federal legislative jurisdiction, and, since the Federal Government did not seek to prevent the enforcement of this law, the presumption of Federal acceptance of legislative jurisdiction was effectively rebutted.

## CRIMINAL JURISDICTION

*Right of Defining and Punishing For Crimes:* Exclusive Federal Jurisdiction. -- Areas over which the Federal Government has acquired exclusive legislative jurisdiction are subject to the exclusive criminal jurisdiction of the United States. *Bowen v. Johnston*, 306 U. S. 19 (1939); *United States v. Watkins*, 22 F. 2d 437 (N. D. Cal., 1927). That the States can neither define nor punish for crimes in such areas is made clear in the case of In re Ladd, 74 Fed. 31 (C. C. N. D. Neb., 1896), (p. 40):

> * * * The cession of jurisdiction over a given territory takes the latter from within, and places it without, the jurisdiction of the ceding sovereignty. After a state has parted with its political jurisdiction over a given tract of land, it cannot be said that acts done thereon are against the peace and dignity of the state, or are violations of its laws; and the state certainly cannot claim jurisdiction criminally by reason of acts done at places beyond, or not within, its territorial jurisdiction, unless by treaty or statute it may have retained jurisdiction over its own citizens, and even then the jurisdiction is only over the person as a citizen. * * *

The criminal jurisdiction of the Federalize Government extends to private lands over which legislative jurisdiction has been vested in the Government, as well] as to federally owned lands. *United States v. Unzeuta*, supra; see also *Petersen v. United States*, 191 F. 2d 154 (C. A. 9, 1951), cert. denied 342 U. S. 885. Indeed, the Federal Government's power derived from exclusive legislative jurisdiction over an area may extend beyond the boundaries of the area, as may be necessary to make exercise of the Government's jurisdiction effective; thus, the Federal Government may punish a person not in the exclusive jurisdiction area for concealment of his knowledge concerning the commission of a felony within the area. *Cohens v. Virginia*, 6 Wheat. 264, 426-429 (1821).          In  *Hollister v. United States*, 145 Fed. 773 (C. A. 8, 1906), the court said (p. 777):

Instances of relinquishment and acceptance of criminal jurisdiction by rate

Legislatures *and* the national Congress, respectively, over forts, arsenals, public buildings, and other property of the United States situated within the states, are common, and their legality has never, so far as we know, been questioned.

On the other hand, while the Federal Government has power under various provisions of the Constitution to define, and prohibit as criminal, certain acts or omissions occurring anywhere in the United States, it has no power to punish for various other crimes, jurisdiction over which is retained by the States under our Federal-State system of government, unless such crimes occur on areas as to which legislative *jurisdiction* has been vested in the Federal Government. The absence of jurisdiction in a State, or in the Federal Government, over a criminal act occurring in an area as to which only the other of these governments has legislative jurisdiction is demonstrated by the case of *United States v. Tully*, 140 Fed. 899 (C. C. D. Mont., 1905). Tully had been convicted by a State court in Montana of first degree murder, and sentenced to be hanged. The Supreme Court of the State reversed the conviction on the ground that the homicide had occurred on a military reservation over which exclusive jurisdiction was vested in the Federal Government. The defendant was promptly indicted in the Federal court, but went free as the result of a finding that the Federal Government did not, have legislative jurisdiction over the particular land on which the homicide had occurred. The Federal court said (id. p. 905):

> It is unfortunate that a murderer should go unwhipped of justice, but it would be yet more unfortunate if any court should assume to try one charged with a crime without jurisdiction over the offense. In this case, in the light of the verdict of the jury in the state court, we may assure that justice would be done the defendant were he tried and convicted by any court and executed pursuant to its judgment. But in this court it would be the justice of the vigilance committee wholly without the pale of the law. The fact that the defendant is to be discharged may furnish a text for the thoughtless or uninformed to say that a murderer has been turned loose upon a technicality; but this is not a technicality. It goes to the very right to sit in judgment. * * * These sentiments no doubt appealed with equal force to the Supreme Court of Montana, and it is to its credit that it refused to lend its aid to the execution of one for the commission of an act which, in its judgment, was not cognizable under the laws of its state; but I cannot bring myself to the conclusion reached by that able court, and it is upon the judgment and conscience of this court that the matter of jurisdiction here must be decided.

The United States and each State are in many respects separate sovereigns, and ordinarily one cannot enforce the laws of the other.

State and local police have no authority to enter an exclusive Federal area to make investigations, or arrests, for crimes committed within such areas since Federal, not State, offenses are involved. Only Federal law enforcement officials, such as representatives of the Federal Bureau of Investigation and United States marshals and their deputies, would be authorized to investigate such of offenses and make arrests in connection with them. The policing of Federal exclusive jurisdiction areas must be accomplished by Federal personnel, and an offer of a municipality to police a portion of a road on such an area could not be accepted by the Federal official in charge of the area, as police protection by a municipality

to such an area would be inconsistent with Federal exclusive jurisdiction.

Concurrent Federal and State criminal jurisdiction.--There are, of course, Federal areas as to which a State, in ceding legislative jurisdiction to the United States, has reserved some measure of jurisdiction, including criminal jurisdiction, concurrently to itself. In general, where a *crime* has been committed in an area over which the United States and a State have concurrent criminal jurisdiction, both governments may try the accused without violating the double jeopardy clause of the Fifth Amendment. *Grafton v. United States*, 206 U. S. 333 (1907), held that the same acts constituting a crime cannot, after a defendant's acquittal or conviction in a court of competent jurisdiction of the Federal Government, be made the basis of a second trial of the defendant for that crime in the same or in another court, civil or military, of the same government. However, where the same act is a crime under both State and Federal law, the defendant may be punished under each of them. *Hebert v. Louisiana*, 272 U. S. 377 (1922). (p.382):

> It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government, *Barron v. Baltimore*, 7 Pet. 243, and the double jeopardy therein forbidden is a second prosecution under authority of the Federal Government after a first trial for the same offense under the same authority., ,

It is well settled, of course, that where two tribunals have concurrent jurisdiction that which first takes cognizance of a matter has the right, in general, to retain it to a conclusion, to the exclusion of the other. The rule seems well stated in *Mail v. Maxwell*, 107 Ill. 554 (1882), (p. 561):

> Where one court has acquired jurisdiction, no other court, State or Federal, will, in the absence of supervising or appellate jurisdiction, interfere, unless in pursuance of some statute, State or Federal, providing for such interference.

Other courts have held similarly. There appears to be some doubt concerning the status of a court-martial as a court, within the meaning of the Judicial Code, however.

Law *enforcement* on areas of exclusive or concurrent jurisdiction. -- The General Services Administration is authorized by statute to appoint its uniformed guards as special policemen, with the same powers as sheriffs and constables to enforce Federal laws enacted for the protection of persons and property, and to prevent breaches of the peace, to suppress affrays or unlawful assemblies, and to enforce rules made by the General Services Administration for properties under its jurisdiction; but the policing powers of such special policemen are restricted to Federal property over which the United States has acquired exclusive or concurrent jurisdiction. Upon the application of the head of any Federal department or agency having property of the United States under its administration or control and over which the United States has exclusive or concurrent jurisdiction, the General Services Administration is authorized by statute to detail any such special policeman for the protection of such property and, if it is deemed desirable, to extend to such property the applicability of regulations governing property promulgated by the General Services

Administration. The General Services Administration is authorized by the same statute to utilize the facilities of existing Federal law-enforcement agencies, and, with the consent of any State or local agency, the facilities and services of such State or local law enforcement agencies.

Although the Department of the Interior required protection for an installation housing important secret work, the General Services Administration was without authority to place uniformed guards on the premises in the absence in the United States of exclusive or concurrent jurisdiction over the property, and notwithstanding the impropriety of permitting the policing of the property by local officials, if they were willing, without necessary security clearances.

Civilian Federal employees may be assigned to guard duty on Federal installations, but there is no Federal statute (other than that appertaining to General Services Administration and three statutes of even less effect 16 U.S.C. 559 (Forest Service), and 16 U.S.C. 10 and 10a (National Park Service) conferring any special authority on such guards. They are not peace officers with the usual powers of arrest; and have no greater powers of arrest than private citizens. As citizens, they may protect their own lives and property and the safety of others, and as agents of the Government they have a special right to protect the property of the Government. For both these purposes they may use reasonable force, 'and for the latter purpose they may bear arms irrespective of State law against bearing arms. Such guards, unless appointed as deputy sheriffs (where the State has at least concurrent criminal jurisdiction), or deputy marshals (where the United States has at least concurrent criminal jurisdiction), have no more authority than other private individuals so far as making arrests is concerned.

State and local officers may, by special Federal statute, preserve the peace and make arrests for crimes under the laws of States, upon immigrant stations, and the jurisdiction of such officers and of State and local courts has been extended to such stations for the purposes of the statute.

Partial jurisdiction. -- In some instances States in granting to the Federal Government a measure of exclusive legislative jurisdiction over an area have reserved the right to exercise, only by themselves, or concurrently by themselves as well as by the Federal Government, criminal jurisdiction over the area. In instances of complete State retention of criminal jurisdiction, whether with respect to all matters or with respect to a specified category of matters, the rights of the States, of the United States, and of any defendants, with respect to crimes as to which State jurisdiction is so retained are as indicated in this chapter for areas as to which the Federal Government has no criminal jurisdiction. In instances of concurrent State and Federal criminal jurisdiction with respect to any matters the rights of all parties are, of course, determined with respect to such matters according to the rules of law generally applicable in areas of concurrent jurisdiction. Accordingly, there is no body of law specially applicable to criminal activities in areas under the partial legislative jurisdiction of the United States.

State criminal jurisdiction retained. -- State criminal jurisdiction extends into areas owned or occupied by the Federal Government, but as to which the Government has not acquired exclusive legislative jurisdiction with respect to crimes. And as to many areas owned by the Federal Government for its various purposes it has not acquired legislative jurisdiction. The Forest Service of the Department of Agriculture, for example, in accordance with a provision of Federal law (16 U. S. C. 480), has not accepted the jurisdiction proffered

by the statutes of many States, and the vast majority of Federal forest lands are held by the Federal Government in a proprietorial status only.

The Federal Government may not prosecute for ordinary crimes committed in such areas. Federal civilians who may be appointed as guards in the areas do not have police powers, but possess only the powers of arrest normally had by any citizen unless they receive appointments as State or local police officers.

The foregoing present several questions concerning the purported jurisdiction of the Court in the above styled action. Some of which are:

1.    Did the federal government ever obtain jurisdiction over the geographical areas described in the governments charging instruments as being the Locus in Quo whereon the purportedly prohibited acts of the undersigned took place ?

    a.    If so, when?

    b.    If so, to what extent?

2.    Are the governments charging instruments defective on their face where they fail to establish on their face or at any subsequent juncture therein, that the locus in quo was within the legislative, territorial or admiralty jurisdiction of the federal United States?

    a.    Was the Grand Jury informed that the locus in quo, as described by the government, not within the legislative, territorial or admiralty jurisdiction of the United States?

    b.    Did the United States district court commit reversible error where it failed to render a legal determination on the record as to whether or not the Court had jurisdiction to entertain the cause.

3.    Did the federal government establish on the record that it had Subject Matter jurisdiction over the alleged prohibited act(s), where the government failed to charge the undersigned with an alleged violation of the federal "Interstate Commerce" clause?

    a.    Did the federal government inform the Grand Jury that the sine qua non to the legitimate application of the enumerated subsections of the Controlled Substances Act is Commerce?

    b.    Did the United States district court error where it failed to notice the missing element in the charged offense, and failed to render a legal determination as to the obvious defect?

## JUDICIAL NOTICE

## FACTS AND FINDINGS OF LAW

FACTS AND FINDS:

Fact, a thing done; an action performed or an incident transpiring, an event or circumstance; an actual occurance.

(SPECIAL) FINDING:

Is a specific setting forth of the ultimate facts established by the evidence and which are determinative of the judgment which must be given. It is only a determination of the ultimate facts on which the law must be determined. A special finding may also be said to be one limited to the fact issue submitted.

ULTIMATE FACTS:

One that is essential to the right of action of matter of defense, and the trial court is under the duty of submitting only ultimate or controlling issues.

1. Title 42 U.S.C.A. 1986 "Action for neglect to prevent," every person who having knowledge that any of the wrongs conspired to be done and mentioned in Section 42 U.S.C. 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured, or persons legal representative, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on case; and any number or persons guilty of such wrongful neglect or refusal may be joined as defendants in action. (42 U.S.C.A. 1986 is a derivative of 1985 and provides remedy for persons injured by neglect or refusal of those having power to do so to prevent wrongs specified in 1985).

2. Title 28 U.S.C.A. Section 453:  each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office:  "I ____ do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharged and perform all the duties incumbent upon me as ____, under the Constitution and laws of the United States so help me God.

//// - 23

3.    7th Amendment:  In suits of common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved, and no fact tried except by jury.

4.    Title 18 U.S.C.A. Sect. 1621 "Perjury" whoever

     (1)  having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or,

     (2)  in any declaration, certificate, verification, or statement under penalty of perjury as perjury as permitted under Section 1746 of Title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except otherwise expressly by laws, be fined under this title or imprisoned not more than five years, or both.  This section is applicable whether the statement of subscription is made within or without the United States.  See:  18 U.S.C. 1622, 18 U.S.C. 1623, and 18 U.S.C. 1001.

5.    "Perjury of Oath of Office"  Perjury; in for judgmental law, the willful assertion as to a matter of fact, opinion, belief or knowledge, made by a witness in a judicial proceeding as part of his or her evidence, either upon oath or in any form allowed by law to be substituted for an oath or in any form allowed by law whether such evidence is given in open court, or in affidavit, such assertion being material to the issue or point of inquiry and known to such witness to be false. Perjury is a crime committed when a lawful oath is administered, in some judicial proceeding, to a person who swears willfully, and falsely, in matters material to the issue or point in question.  (Reference Gatewood v. State, 15 MD. App. 314, 290 A.2d 551, 553; F.R.C.P. Rule 9(b), 12(d)(1), (2),(7); Title 42 U.S.C. 1986, 1985, 1983 Note 349, 14th Amendment U.S. Constitution.

6.    F.R.C.P. Rule 56(e):  Form of Affidavits; further testimony; defense required; supporting and opposing affidavits shall be made on personal knwoledge, shall set forth such facts as would be admissable in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated herein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit

shall be attached thereto and served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.

7.    Stare Decisis:  Policy of courts to stand by precedent and not to disturb settled point, Neff v. George, 364 Ill. 306, 4 N.E.2d 388, 390, 391.  Doctrine that, when a court has once laid down a principal of law as applicable to a certain state of facts; regardless of whether parties and property are the same.  Horne v. Moody Tax Civ., App., 146 S.W.2d 505, 509, 510.  Under doctrine a deliberate or solemn decision of court made after argument on question of law fairly arising in the case, and necessary to its determination, is an authority of binding precedent in the same court or in other courts of equal or lower rank in subsequent cases where the very point is again in controversy. State v. Mellenberger, 163 Or. 233, 95 P.2d 709, 719, 720.  Blacks Law Dictionary 5th Edition pg. 1261.  (Further reference:  Defendants knowledge of wrongful acts is statutory prerequisite to suit under 42 U.S.C. 1986.  Buck v. Board of Elections, (1976, CA. 2, NY) 536 F.2d 522.  Prior, unreviewed state administrative adjudication may have no preclusive effect on claims subsequently asserted under 42 U.S.C.S. 1981, 1983, 1985, 1986, 1988.  Elliot v. University of Tennessee, (1985, CA. 6 Tenn.) 766 F.2d 982, 38 BNA FEP Cas. 522, 37 CCH EPD 25419, cert. gr. 474 U.S. 788, 92 L.Ed.2d 635, 106 S.Ct. 3220, 41 BNA FEP Cas. 177, 40 CCH EPD 36205).

8.    F.R.C.P. 12(b)(6):  Rule 12 is defenses: Rule 12(b) states with particularity, "How Presented," every defense in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defense may at the opinion of the pleader be made Section 8, 12(b)(6): failure to state a claim upon which relief can be granted.  (Refer Note 7).

9.    F.R.C.P. 12(b)(2):  Rule 12 is defenses: Rule 12(b) states with particularity, "How Presented," every defense in law of fact shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: 12(b)(2) lack of jurisdiction over the person. (Refer F.R.C.P. 12(b)(7): failure to join a party under Rule 19.)(F.R C.P. 19(b)).

10.    F.R.C.P. 12(b)(1):  Rule 12 is defenses: Rule 12(b) states with particularity, "How Presented," every defense in law or fact to a claim for relief in any pleading, whether a claim, counter claim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defense may at the option of the pleader be made by motion: 12(b)(1): lack of jurisdiction over the subject matter.

11.    F.R.C.P. 12(b)(7): Rule 12 is defenses: Rule 12(b) states with particularity, How Presented," every defense in law or fact, to a claim for relief in any pleading, whether a cliam, counter claim, cross-claim, or third party claim shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: 12(b)(7): Failure to join a party under Rule 19.

12.    14th Amendment: No state shall make or enforce any law which shall abridge the privileges or immunities of the U.S., nor shall any state deprive any person of like, liberty, or property without due process of the law, nor to any person the equal protection of the law.13.    Title 18 U.S.C.A. Section 872: Extortion by officers or employees of the United States whoever, being an officer, or employee of the United States or any department or agency therof, or representing himself to be or assuming to act as such, under color or pretense of office or employment commits or attempts an act of extortion, shall be fined under this title or imprisoned not more than 3 years, or both; but if the amount so extorted or demanded does not exced $100, he shall be fined under this title or imprisoned not more than one year.  (As amended October 31, 1951, c. 655 subsect. 24(3), 65 Stat. 720; September 13, 1994, Pub. L. 103-322,  Title XXXIII, subsect. 3 30016(1)(G)(K), 108 Stat. 2147).

14.    1st Amendment: Freedom of Speech and Press, and to petition
for a redress of grievance.  5th Amendment: No person shall be depriv-
ed of life, liberty, or property without due process of law.  6th
Amendment: Right to a speedy and public trial, by an impartial jury
of the state and district wherein the crime shall have been committed,
and informed of the nature and cause of the accusation.  7th Amendment:
In suits of comon law, where the value in controversy shall exceed
twenty dollars, the right to trial by jury shall be preserved, and
no fact tried except by jury.

15.    Title 18 U.S.C.A. Section 242: provides in pertinent part;
"whoever, under color of law, statute, ordinance, regulation, or custom
willfully subjects any inhabitant of any state, territory, or district
to the deprivation of any rights, privileges, or immunities secured
or protected by the Constitution or laws of the United States...shall
be fined not more than $1000 dollars or imprisoned not more than one
year, or both."  Question was not whether state law had been violated
but whether inhabitant of state HAD been deprived of federal right
by one who acted under color of any law.  Screws v. United States,
(1945) 325 U.S. 91, 89 L.ED. 1495, 65 S.Ct. 1031, 162 ALR 1330.

16.    Title 42 U.S.C.A. Section 1985: (2) Ref. Obstructing Justice
intimidating party, witness, (2) if two or more persons in any state
or twrritory conspire to deter, by force, intimidation, or threat,
any party or witness in nay court of the United States from "attending
such court or from testifying to any matter pending" therein, freely,
fully, and thruthfully, or to injure such party or witness in his
person or property on account of his having so attended or testified,
or to influence the verdict, presentment, or indictment of any grand
or petit jury on property on account of any verdict, presentment,
or indictment lawfully assented to by him, or of his being or having
been such juror: or if two or more persons conspire for the purpose
of impeding, hindering, obstructing, or defeating, in any matter,
the due course of justice in any state or territory, with intent to
deny to any citizen the equal protection of the law or to injure him
or his property for lawfully enforcing, or attempting to enforce,
the right of any person, or class of persons, to the equal protection
of the law.

    DISCRIMINATION: A failure to treat all persons equally where no
reasonable distinction can be found between those favored and those

not favored.  Ref. Baker v. Cal. Land Title Co., D.C. Cal. 349, F.Supp. 23, 238, 239.  Title VII of the 1964 Civil Rights Act.

17.    Title 18 U.S.C.A. 241: "If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privileges secured to him by the Constitution or laws of the United States or because of his having so exercised the same;" or

"If two or more persons go in disguise on the highway or on the premises of another, with intnet to prevent or hinder his free exercise or enjoyment of any right or privilege so secured."

"They shall be fined not more than $10,000 or imprisoned more than ten years, or both."

18.    Title 42 U.S.C.A. Section 1983; every person who, under color of any statute, ordinance,  regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper procedding for redress.

19.    4th Amendment: Unreasonable search and seizures shall not be violated, and no warrants shall issue, but upon probable cause and supported by "oath or affirmatin," and particularly describing the place to be searched and the person or thing to be seized.

20.    Although city is not "person" amendable to action under 42 U.S.C.A. 1986, city officials acting in thier official capacities are subject to action under this.  Black Bros. Combined Inc. v. Richmand, 386 F.Supp. 147, 12 BNA FEP Cas 432, 10 CCH EPD 1027, (1974, ED Va).  If city or other municipal corporation had policy or custom of refusing or neglecting to prevent violations of 42 U.S.C.A. 1985, and city's agents, servants, and employees followed that policy or custom, then city should be held liable under 42 U.S.C.A. 1986. Vasquez v. Reno, 461 F.Supp. 1098, 21 BNA FEP Cas 1281, 19 CCH EPD 9091, (1978, DC Nev).  Municipality is directly liable under 42 U.S.C.A. 1985(2), 1985(3), and 1986 only where it is shown that deprivation of rights was pursuant to policy statement, ordinance, regulation, a decision of an official adopted and promulgated in

Whereby, the government's cause against the Petitioner is premised upon an unlawful application of law:

1. Lack of subject matter jurisdiction;
2. Lack of jurisdiction over defendant, a citizen party;
3. No Fourth Amendment Search Warrant;
4. Unlawful application of U.S. Codes;
5. Unlawful indictment;
6. Lack of published regulations in the Federal Register;
7. Failing to give notice under Due Process and denial of Due Process;
8. Usurpation of power not delegated or legislated;
9. Unauthorized prosecution under Admiralty/Maritime law;
10. and, the denial of the effective assistance of counsel.

### CONCLUSION

In the nature of Rule 201(d) of the Federal Rules of Evidence the court is compelled to take Judicial Notice of the foregoing, who it is shown that the legislative jurisdiction of the Federal Government is strictly limited and defined. The Federal Government has no Constitution or Congressional authority to restrict or compel the activities of private citizens, domiciled without the legislative, territorial or admirlaty jurisdiction of the Federal United States. The jurisdiction of the court is limited by and does not exceed that of the Federal Government. Where the instant matter is concerned, neither the Federal Government or the district court have established, on the record, documented proof that the alleged prohibitive conduct violated a provision of law.

**WHEREFORE,** the undersigned respectfully prays that the court will take JUDICIAL NOTICE of the foregoing and find as a matter of law and fact - that the Federal Government lacks legislative and Subject Matter Jurisdiction.

Date: _Dec - 27_____, 2007.          Respectfully submitted:

_Charley M Hunt Jr_

Charley M. Hunt, Jr.

///// - 30



# Congressional Record

United States of America

PROCEEDINGS AND DEBATES OF THE 80th CONGRESS, SECOND SESSION

## SENATE

### MONDAY, JULY 26, 1948

The Senate reassembled this day in its Chamber at the Capitol, in the city of Washington, in pursuance of the proclamation of the President of the United States of the 15th day of July 1948.

ARTHUR VANDENBERG, President pro tempore, called the Senate to order at 12 o'clock noon.

Rev. Bernard Braskamp, D. D., pastor of the Gunton-Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

O Thou God of infallible wisdom, we have entered upon days which are fraught with perplexing problems and heavy responsibilities, but also with glorious opportunities and possibilities.

We pray that we may have the interpreting light and the clear and confident leading of Thy spirit in all our deliberations and decisions.

May the ideals and principles of our blessed Lord not only stir our emotions but our wills, and may every lofty God-inspired sentiment be translated into action and achievement.

Grant that it may be the goal of all our aspirations to glorify Thy great and holy name and to build Thy kingdom of peace and good will among men and nations.

Hear us for the sake of the Christ. Amen.

The PRESIDENT pro tempore. The proclamation of the President reconvening the Congress will be read by the clerk.

The Chief Clerk (Edward E. Mansur, Jr.) read the proclamation, as follows:

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA—A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive:

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord 1948, and of the independence of the United States of America the one hundred and seventy-third.

HARRY S. TRUMAN.

By the President:
G. C. MARSHALL,
Secretary of State.

### CALL OF THE ROLL

Mr. WHERRY. I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnson, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Tye |
| Feazel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

Mr. WHERRY. I announce that the Senator from Minnesota [Mr. BALL], the Senator from Ohio [Mr. BRICKER], the Senator from Delaware [Mr. BUCK], the Senator from South Dakota [Mr. BUSHFIELD], the Senator from Vermont [Mr. FLANDERS], the Senator from Oregon [Mr. MORSE], and the Senator from Iowa [Mr. WILSON] are necessarily absent.

The Senator from New Hampshire [Mr. BRIDGES] is detained on official business.

The Senator from Idaho [Mr. DWORSHAK] is absent on official state business.

The Senator from New York [Mr. IVES] is absent because of illness in his family.

The Senator from Nevada [Mr. MALONE] is absent on official committee business of the Committee on Public Works.

Mr. LUCAS. I announce that the Senator from New Mexico [Mr. CHAVEZ] is unavoidably detained.

The Senator from Arkansas [Mr. FULBRIGHT], the Senator from Nevada [Mr. McCARRAN], the Senator from Tennessee [Mr. McKELLAR], the Senator from Maryland [Mr. TYDINGS], and the Senator from New York [Mr. WAGNER] are necessarily absent.

The PRESIDENT pro tempore. Seventy-eight Senators having answered to their names, a quorum is present.

### THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent, that, without reading, the Journal of the proceedings of the Senate for the calendar days Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, be approved.

The PRESIDENT pro tempore. Without objection, the order is made.

### ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had previously been signed by the Speaker of the House of Representatives:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1623. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

672

[CHAPTER 644]

June 25, 1948
[H. R. 6412]
[Public Law 771]

## AN ACT

To codify and enact into law Title 3 of the United States Code, entitled "The President".

Title 3, U. S. Code.
Codification and enactment into positive law.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 3 of the United States Code, entitled "The President", is codified and enacted into positive law and may be cited as "3 U. S. C., § ——", as follows:

## TITLE 3—THE PRESIDENT

Infra.
Post, p. 678.
Post, p. 679.

Chap.                                                                      Sec.
1. Presidential Elections and Vacancies_____   1
2. Office and Compensation of President_____ 101
3. Protection of the President; the White House Police_____ 201

### CHAPTER 1—PRESIDENTIAL ELECTIONS AND VACANCIES

Sec.
1. Time of appointing electors.
2. Failure to make choice on prescribed day.
3. Number of electors.
4. Vacancies in electoral college.
5. Determination of controversy as to appointment of electors.
6. Credentials of electors; transmission to Secretary of State and to Congress; public inspection.
7. Meeting and vote of electors.
8. Manner of voting.
9. Certificates of votes for President and Vice President.
10. Sealing and endorsing certificates.
11. Disposition of certificates.
12. Failure of certificates of electors to reach President of Senate or Secretary of State; demand on State for certificate.
13. Same; demand on district judge for certificate.
14. Forfeiture for messenger's neglect of duty.
15. Counting electoral votes in Congress.
16. Same; seats for officers and Members of two Houses in joint meeting.
17. Same; limit of debate in each House.
18. Same; parliamentary procedure at joint meeting.
19. Vacancy in offices of both President and Vice President; officers eligible to act.
20. Resignation or refusal of office.

## CHAPTER 1—PRESIDENTIAL ELECTIONS AND VACANCIES

### TIME OF APPOINTING ELECTORS

§ 1. The electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President.

### FAILURE TO MAKE CHOICE ON PRESCRIBED DAY

§ 2. Whenever any State has held an election for the purpose of choosing electors, and has failed to make a choice on the day prescribed by law, the electors may be appointed on a subsequent day in such a manner as the legislature of such State may direct.

### NUMBER OF ELECTORS

§ 3. The number of electors shall be equal to the number of Senators and Representatives to which the several States are by law entitled at the time when the President and Vice President to be chosen come into office; except, that where no apportionment of Representatives has been made after any enumeration, at the time of choosing electors,

## CIVIL COVER SHEET

JS-44
Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

### II BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes:
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or

62 STAT.]    80TH CONG., 2D SESS.—CH. 646—JUNE 25, 1948    869

[CHAPTER 646]

AN ACT

To revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary".

June 25, 1948
[H. R. 3214]
[Public Law 773]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That title 28 of the United States Code, entitled "Judicial Code and Judiciary" is hereby revised, codified, and enacted into law, and may be cited as "Title 28, United States Code, section —", as follows:

Title 28, U. S. Code.
Codification and enactment into law.

# TITLE 28, JUDICIARY AND JUDICIAL PROCEDURE

| Part | | Sec. |
|---|---|---|
| I. Organization of courts | | 1 |
| II. United States attorneys and marshals | | 501 |
| III. Court officers and employees | | 601 |
| IV. Jurisdiction and venue | | 1251 |
| V. Procedure | | 1651 |
| VI. Particular proceedings | | 2201 |

*Infra.*
*Post,* p. 900.
*Post,* p. 913.
*Post,* p. 927.
*Post,* p. 943.
*Post,* p. 964.

## PART I.—ORGANIZATION OF COURTS

| Chapter | | Sec. |
|---|---|---|
| 1. Supreme Court | | 1 |
| 3. Courts of appeals | | 41 |
| 5. District courts | | 81 |
| 7. Court of Claims | | 171 |
| 9. Court of Customs and Patent Appeals | | 211 |
| 11. Customs Court | | 251 |
| 13. Assignment of judges to other courts | | 291 |
| 15. Conferences and councils of judges | | 331 |
| 17. Resignation and retirement of judges | | 371 |
| 19. Distribution of reports and digests | | 411 |
| 21. General provisions applicable to courts and judges | | 451 |

### CHAPTER 1—SUPREME COURT

Sec.
1. Number of justices; quorum.
2. Terms of court.
3. Vacancy in office of Chief Justice; disability.
4. Precedence of associate justices.
5. Salaries of justices.
6. Records of former court of appeals.

## § 1. Number of justices; quorum

The Supreme Court of the United States shall consist of a Chief Justice of the United States and eight associate justices, any six of whom shall constitute a quorum.

## § 2. Terms of court

The Supreme Court shall hold at the seat of government a term of court commencing on the first Monday in October of each year and may hold such adjourned or special terms as may be necessary.

## § 3. Vacancy in office of Chief Justice; disability

Whenever the Chief Justice is unable to perform the duties of his office or the office is vacant, his powers and duties shall devolve upon the associate justice next in precedence who is able to act, until such disability is removed or another Chief Justice is appointed and duly qualified.

## § 4. Precedence of associate justices

Associate justices shall have precedence according to the seniority of their commissions. Justices whose commissions bear the same date shall have precedence according to seniority in age.

62 Stat.]   80th CONG., 2d SESS.—CH. 645—JUNE 25, 1948    683

[CHAPTER 645]

## AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

June 25, 1948
[H. R. 3190]
[Public Law 772]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is hereby revised, codified, and enacted into positive law, and may be cited as "Title 18, U. S. C., § ——", as follows:

Title 18, U. S. Code.
Codification and enactment into positive law.

### TITLE 18—CRIMES AND CRIMINAL PROCEDURE

| Part | | Sec. | |
|---|---|---|---|
| I. | CRIMES | 1 | *Infra.* |
| II. | CRIMINAL PROCEDURE | 3001 | *Post,* p. 813. |
| III. | PRISONS AND PRISONERS | 4001 | *Post,* p. 847. |
| IV. | CORRECTION OF YOUTHFUL OFFENDERS | 5001 | *Post,* p. 856. |

### PART I—CRIMES

| Chapter | | Sec. |
|---|---|---|
| 1. | General provisions | 1 |
| 3. | Animals, birds and fish | 41 |
| 5. | Arson | 81 |
| 7. | Assault | 111 |
| 9. | Bankruptcy | 151 |
| 11. | Bribery and graft | 201 |
| 13. | Civil rights | 241 |
| 15. | Claims and services in matters affecting government | 281 |
| 17. | Coins and currency | 331 |
| 19. | Conspiracy | 371 |
| 21. | Contempts constituting crimes | 401 |
| 23. | Contracts | 431 |
| 25. | Counterfeiting and forgery | 471 |
| 27. | Customs | 541 |
| 29. | Elections and political activities | 591 |
| 31. | Embezzlement and theft | 641 |
| 33. | Emblems, insignia, and names | 701 |
| 35. | Escape and rescue | 751 |
| 37. | Espionage and censorship | 791 |
| 39. | Explosives and combustibles | 831 |
| 41. | Extortion and threats | 871 |
| 43. | False personation | 911 |
| 45. | Foreign relations | 951 |
| 47. | Fraud and false statements | 1001 |
| 49. | Fugitives from justice | 1071 |
| 51. | Homicide | 1111 |
| 53. | Indians | 1151 |
| 55. | Kidnaping | 1201 |
| 57. | Labor | 1231 |
| 59. | Liquor traffic | 1261 |
| 61. | Lotteries | 1301 |
| 63. | Mail fraud | 1341 |
| 65. | Malicious mischief | 1361 |
| 67. | Military and Navy | 1381 |
| 69. | Nationality and citizenship | 1421 |
| 71. | Obscenity | 1461 |
| 73. | Obstruction of justice | 1501 |
| 75. | Passports and visas | 1541 |
| 77. | Peonage and slavery | 1581 |
| 79. | Perjury | 1621 |
| 81. | Piracy and privateering | 1651 |
| 83. | Postal service | 1691 |
| 85. | Prison-made goods | 1761 |
| 87. | Prisons | 1791 |
| 89. | Professions and occupations | 1821 |
| 91. | Public lands | 1851 |
| 93. | Public officers and employees | 1901 |
| 95. | Racketeering | 1951 |

AO 245B (Rev 06/05)

Sheet 1- Judgment in a Criminal Case

# United States District Court

## Eastern District of Missouri

UNITED STATES OF AMERICA

v.

CHARLEY M. HUNT, JR.
a/k/a "Chuck"

### JUDGMENT IN A CRIMINAL CASE

CASE NUMBER:  S1-4:07CR121CAS

USM Number:  34105-044

Eric Butts
Defendant's Attorney

THE DEFENDANT:

☒ pleaded guilty to count(s)  eight (8) and twelve (12) of the superseding indictment on June 19, 2007.

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 USC 922(o) | Transferring and Possessing a Machine Gun | 12/28/2006 | 8 |
| 18 USC 922(g)(1) | Felon in Possession of Firearms | 12/28/2006 | 12 |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s)  6-7 and 9-10 of the superseding indictment    are    dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

September 6, 2007
Date of Imposition of Judgment

Signature of Judge

CHARLES A. SHAW
UNITED STATES DISTRICT COURT JUDGE
Name & Title of Judge

September 6, 2007
Date signed

Record No.  568

AO 245B (Rev. 06/05)    Judgment in Criminal Case — Sheet 2 - Imprisonment

CHARLEY M. HUNT, JR.                                          Judgment-Page __2__ of __6__

DEFENDANT: a/k/a "Chuck"

CASE NUMBER:  S1-4:07CR121CAS

District:  Eastern District of Missouri

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of  40 Months

This term consists of a term of 40 months on each of counts eight and twelve, all such terms to be served concurrently.

☒  The court makes the following recommendations to the Bureau of Prisons:

To the extent that space is available and that the defendant is qualified, it is recommended the he be allowed to serve this term of incarceration as close to the St. Louis, Missouri area as possible.

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

☐  at  _____ a.m./pm on  _____

☐  as notified by the United States Marshal.

☒  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐  before 2 p.m. on  _____

☒  as notified by the United States Marshal

☐  as notified by the Probation or Pretrial Services Office

## MARSHALS RETURN MADE ON SEPARATE PAGE

AO 245B (Rev. 06/05)   Judgment in Criminal Case   Sheet 3 - Supervised Release

CHARLEY M. HUNT, JR.            Judgment—Page   3   of   6

DEFENDANT: a/k/a "Chuck"

CASE NUMBER:  S1-4:07CR121CAS

District:  Eastern District of Missouri

## SUPERVISED RELEASE

. Upon release from imprisonment, the defendant shall be on supervised release for a term of   3years

This term consists of three years on each of counts eight and twelve, all such terms to run concurrently. If the defendant successfully complies with all standard and special conditions of supervised release, the term of 3 years of supervised release maybe be terminated after 2 years.

     The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

| | The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒   The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

☒   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable)

| | The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

| | The Defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment

The defendant shall comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev 06/05)    Judgment in Criminal Case    Sheet 3C - Supervised Release

CHARLEY M. HUNT, JR.
DEFENDANT:    a/k/a "Chuck"
CASE NUMBER:    S1-4:07CR121CAS
District:    Eastern District of Missouri

Judgment-Page ___4___ of ___6___

# SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of commencement of supervision and at least two periodic drug test thereafter for use of a controlled substance.

2. If found absolutely necessary by the United States Probation Officer, the defendant shall participate in a drug or alcohol abuse treatment program approved by the United States Probation Office, which may include substance abuse testing, counseling, residence in a Community Corrections Center, residence in a Comprehensive Sanctions Center, Residential Re-Entry Center, or inpatient treatment in a treatment center or hospital. The defendant shall pay for the costs associated with substance abuse services based on a co-payment fee established by the United States Probation Office. Co-payment shall never exceed the total cost of services provided.

3. The defendant shall abstain from the use of alcohol and/or all other intoxicants.

4. The defendant shall submit his person, residence, office, or vehicle to a search, conducted by the United States Probation Office at reasonable times and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

5. If not obtained while in Bureau of Prisons' custody, the defendant shall participate in GED classes as approved by the United States Probation Office.

6. Upon release from imprisonment, the defendant shall participate in an evaluation to determine if sex-offense specific treatment is needed, and if so, the defendant shall participate in a sex-offense specific treatment program. The defendant shall enter, cooperate, and complete said program until released by the United States Probation Officer. The defendant shall abide by all policies and procedures of the sex-offense specific program. During the course of said treatment, the defendant shall be subject to periodic and random physiological testing which may include but is not limited to polygraph testing and/or other specialized assessment instruments. The defendant shall pay for the cost associated with treatment based on a co-payment fee approved by the United States Probation Office. Co-payments shall never exceed the total costs of treatment.

AO 245B (Rev. 06/05)   Case 4:07-cr-0012 -CAS    Document 229    Filed 09/06/2007    Page 5 of 7
Judgment in Criminal Case    Sheet 5 - Criminal Monetary Penalties

CHARLEY M. HUNT, JR.                                      Judgment-Page __5__ of __6__
DEFENDANT: a/k/a "Chuck"
CASE NUMBER:  S1-4:07CR121CAS
District:    Eastern District of Missouri

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on sheet 6

|          | Assessment | Fine | Restitution |
|----------|------------|------|-------------|
| Totals:  | $200.00    |      |             |

☐ The determination of restitution is deferred until _____. *An Amended Judgment in a Criminal Case* (AO 245C) will be entered after such a determination.

☐ The defendant shall make restitution, payable through the Clerk of Court, to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---------------|-------------|---------------------|------------------------|
|               |             |                     |                        |
| Totals:       |             |                     |                        |

☐ Restitution amount ordered pursuant to plea agreement _____

☐ The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ The interest requirement is waived for the.   ☐ fine and /or   ☐ restitution.

☐ The interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B (Rev. 06/05)    Judgment in Criminal Case
Sheet 6 — Schedule of Payments

Case 4:07-cr-001  CAS    Document 229    Filed 09/06  007    Page 6 of 7

DEFENDANT: CHARLEY M. HUNT, JR.
a/k/a "Chuck"
CASE NUMBER: S1-4:07CR121CAS
District: Eastern District of Missouri

Judgment-Page __6__ or __6__

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A  ☒  Lump sum payment of  $200.00  due immediately, balance due

☐  not later than _____ , or

☐  in accordance with  ☐ C,  ☐ D, or  ☐ E below; or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ E below; or  ☐ F below; or

C  ☐  Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after Release from
imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time: or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes  imprisonment, payment of criminal monetary penalties is due
during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons'
Inmate Financial Responsibility Program are made to the clerk of the court.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ ☐  Joint and Several

Defendant and Co-defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
and corresponding payee, if appropriate.

☐ ☐  The defendant shall pay the cost of prosecution.

☐ ☐  The defendant shall pay the following court cost(s):

☐ ☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1 ) assessment; (2) restitution principal, (3) restitution interest, (4) fine principal
(5) fine interest (6) community restitution (7) penalties, and (8) costs, including cost of prosecution and cou

CHARLEY M. HUNT, JR.

DEFENDANT: a/k/a "Chuck"

CASE NUMBER: S1-4:07CR121CAS

USM Number: 34105-044

## UNITED STATES MARSHAL
### RETURN OF JUDGMENT IN A CRIMINAL CASE

I have executed this judgment as follows:

_____

_____

The Defendant was delivered on  10/31/07  to  FCI Ft. Worth, TX

at  3150 Horton Rd  , with a certified copy of this judgment.

UNITED STATES MARSHAL

By _____
        Deputy U.S. Marshal

☐    The Defendant was released on _____ to_____ Probation

☐    The Defendant was released on _____ to_____ Supervised Release

☐    and a Fine of_____  ☐ and Restitution in the amount of_____

UNITED STATES MARSHAL

By _____
        Deputy U.S. Marshal

I certify and Return that on _____, I took custody of _____

at _____ and delivered same to _____

on _____ F.F.T. _____

U.S. MARSHAL E/MO

By DUSM _____